IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TRACY LYNN EDDINGS                                                                    PLAINTIFF

V.                                              NO. 12-3073

CAROLN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Tracy Lynn Eddings, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her application for DIB on March 10, 2009, alleging an inability to work since February 16, 2009, due to "Fibromialgia,[sic] lower back and neck, knees bother me." (Tr. 127-128, 154, 158). An administrative hearing was held on January 20, 2010, at which Plaintiff appeared with counsel, and she and her mother-in-law testified. (Tr. 17-63).

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

By written decision dated November 22, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - fibromyalgia, degenerative disk disease of the cervical spine status post fusion, and remote history of hernia repair. (Tr. 10). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 10). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that she cannot kneel, crouch, crawl, or climb ladders, ropes, and scaffolds. She can only occasionally balance, stoop, and climb ramps and stairs.

(Tr. 11). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs Plaintiff could perform, such as production worker, call out operator, and interviewer. (Tr. 14-15).

Plaintiff then requested a review of the hearing decision by the Appeals Council, who considered some additional evidence, and denied the request on May 5, 2012. (Tr. 1-3). Subsequently, Plaintiff filed this action (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 6, 7).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

AO72A
(Rev. 8/82)

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

What concerns the Court in this case is the fact that there is great disparity among the treating physicians, the consultative examining physician, and the non-examining physician with respect to their opinions as to Plaintiff's ability to function in the workplace. It is not disputed that Plaintiff suffers from, among other things, fibromyalgia. The Eighth Circuit has recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling. Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007). In this case, there is the opinion of Plaintiff's rheumatologist, Dr. Ronald Rubio, to whom Plaintiff was referred from a neurologist, who opined on April 1, 2008, that Plaintiff presented with a history and exam "compatible with underlying fibromyalgia." (Tr. 277). Dr. Rubio reported that he conducted a detailed discussion with Plaintiff regarding the importance of non pharmacological measures, such as low impact exercises or aquatic exercise. (Tr. 277). On April 18, 2008, Dr. Rubio again saw Plaintiff, and his impression was as follows:

      1. Fibromyalgia syndrome
      2. Chronic neck pain and low back pain
      3 Positive ANA without associated connective tissue disease

(Tr. 274). On March 10, 2009, almost a year later, Dr. Rubio gave a summary of his diagnosis:

> 1. Fibromyalgia syndrome with moderate discomfort. She decided to discontinue her Lyrica due to expense limitation. She has stopped working three weeks ago as it is difficult to perform her duties due to fatigue, weakness and chronic pain. We will start her on Neurontin 100 mg b.i.d. We will consider escalating the dose if she tolerates it or if she does not obtain the desired pain relief in 1-2 weeks.
> 2. Chronic low back pain/chronic neck pain. Stable.
> 3. Positive ANA without associated connective tissue disease. She will follow up with me in six months.

(Tr. 278).

In an Arkansas State Highway Report of Medical Examiner dated March 16, 2009,[2] Dr. Rubio reported that Plaintiff had Fibromyalgia Syndrome - chronic-severe; and neck and low back pain - chronic- severe. (Tr. 340). He also reported that unfortunately patients with this degree of debilitating fibromuscular pain "rarely experience substantial clinical benefit from medications or PT over the long term. Studies published regarding long term outcomes in FMS suggest that this chronic condition rarely improves." (Tr. 340).

In a Fibromyalgia RFC Questionnaire dated September 15, 2009, Dr. Rubio reported that Plaintiff met the American College of Rheumatology criteria for fibromyalgia; that her prognosis was poor; that her symptoms consisted of multiple tender points, nonrestorative sleep, and chronic fatigue; that Plaintiff's pain was constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. (Tr. 327, 329). Dr. Rubio opined that Plaintiff was incapable of even "low stress" jobs. (Tr. 329). Among other limitations, Dr. Rubio reported that plaintiff had significant limitations in doing repetitive reaching, handling or fingering; that she could use her hands and fingers 100% but her arms (including overhead

---

[2]Plaintiff had previously worked for the Arkansas State Highway Department.

reaching) 50%; and that she was likely to be absent from work more than four days per month. (Tr. 331).

On March 11, 2010, Dr. Rubio gave the following summary:

> 1. Fibromyalgia syndrome with mild discomfort. We will increase her Gabapentin to 300 g. t.i.d. She was encouraged to perform regular low impact exercises and embark on weight losing program.
> 2. Chronic low back pain/chronic neck pain, stable.
> 3. Positive ANA screen with associated connective tissue disease.
> 4. Vitamin D insufficiency. She was advised to start vitamin D 1,000 units per day. She will continue her calcium with vitamin D 600 mg. b.i.d.
> 5. She was told to follow-up in six months.

(Tr. 410).

On June 27, 2009, Dr. Bill F. Payne, a non-examining consultant, completed a Physical RFC Assessment form, and opined that Plaintiff could perform medium work with no limitations. (Tr. 286-292).

On May 20, 2010, Dr. Ted Honghiran conducted an Orthopaedic Examination and Report of Plaintiff. In a Range of Motion Chart, Dr. Honghiran found Plaintiff's cervical and lumbar spine ranges of motion to be normal. (Tr. 413). In a Medical Source Statement of ability to do Work-Related Activities (physical), Dr. Honghiran found Plaintiff could frequently lift up to 20 pounds; occasionally lift up to 100 pounds; could frequently carry up to 20 pounds; and occasionally carry up to 100 pounds. (Tr. 414). He also found that Plaintiff could sit for 2 hours at one time and stand and walk for 1 hour at a time; could sit 4 hours total in an 8 hour workday, and could stand and walk for 2 hours total in an 8 hour workday; could ambulate for 1 block; could frequently reach (overhead) and reach (all other - handle; finger; feel and push/pull) ; could

frequently operate foot controls with both feet; could frequently climb stairs and ramps; balance, stoop, kneel, crouch, and crawl, and could occasionally climb ladders or scaffolds. (Tr. 414-417). Finally, Dr. Honghiran found that Plaintiff could frequently move mechanical parts; operate a motor vehicle; be exposed to humidity and wetness, dust, odors, fumes and pulmonary irritants; extreme cold and heat and vibrations, and loud (heavy traffic) noise, and could occasionally be exposed to unprotected heights. (Tr. 418). Dr. Honghiran noted that Plaintiff still smoked one and one-half packs per day and took Neurontin for pain and Wellbutrin and hydrocodone on occasion. (Tr. 4210. It was his impression that Plaintiff had a history of having multiple joint pain and aching and inability to sleep, which is consistent with a diagnosis of fibromyalgia "which is a chronic inflammatory process." (Tr. 420). He noted that Plaintiff's problem would be a chronic one, but believed that with basic education or high school, she should be able to do some type of office work if she could not do outside field work. (Tr. 420).

The Court does not believe it was sufficient reason for the ALJ to discount the opinion of Dr. Rubio, who is a specialist in rheumatology, because he did not spend enough time with Plaintiff. The Court believes that there is such disparity between the opinions of Dr. Rubio, Dr. Honghiran, and Dr. Payne, that the ALJ should send interrogatories to Dr. Rubio and Dr. Honghiran, asking them to more specifically substantiate their conclusions. Once answers are received, the ALJ should then re-evaluate Plaintiff's RFC.

**IV.    Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of

42 U.S.C. § 405(g).

ORDERED this 2nd day of July, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)